IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 3:17CR104–3–HEH |
| ) | |
| DUSTIN WASHINGTON, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION
(Denying Defendant's Motion for a New Trial)

Following his conviction by a jury of this Court for conspiracy to distribute and possess with the intent to distribute one kilogram or more of heroin and for possession of a firearm by a convicted felon, the Defendant now moves for a new trial pursuant to Federal Rule of Criminal Procedure 33 ("Motion," ECF No. 281). His Motion is premised on the post-trial discovery of impeachment evidence which he contends could materially affect the credibility of Ernest Warren Wright ("Wright"), a key government witness. Both the United States and Defendant have filed memoranda supporting their respective positions. The Court heard oral argument on June 26, 2018. This Memorandum Opinion follows.

Wright was one of nine non-law enforcement witnesses who took the stand at trial to implicate Defendant in a high volume heroin distribution syndicate. Defendant's Motion argues that the post-trial impeachment evidence renders Wright's testimony incredible and that, taking this testimony out of the equation at trial, the Government's evidence would have been insufficient to prove that the conspiracy involved one

kilogram or more of heroin, as charged. Counsel's argument at the June 26 hearing and the Motion on its face both appeared to concede that the evidence was sufficient, even without Wright's testimony, to support a finding that Defendant was a member of the alleged distribution conspiracy.[1]

Central to the Defendant's argument is Wright's testimony concerning conversations with other co-conspirators that implicated the Defendant. In eliciting this testimony, the Defendant contends that the government directed Wright's attention to a specific time frame, October 2014 through March 2015, during which Wright purportedly knew that the Defendant was selling heroin for co-conspirator Michael Fox ("Fox"). Wright recalled the conversation because the Defendant was driving a BMW 745 during that time span. According to Wright's testimony, on several occasions, Fox would

---

[1] Specifically, at the hearing the Court had the following exchange with counsel for Defendant:

> THE COURT: I'm trying to titrate down just to the principle issue. You don't deny that there was sufficient evidence presented that a trier of fact could find that he was a member of the conspiracy. Your argument is [that] the quantitation of the drug amounts didn't warrant a finding of one kilogram or more, am I correct?
> COUNSEL: That's correct.

(June 28 Hrg. Tr. 4:10–19.) Despite this representation, Defendant's Response to the Supplemental Brief the Court requested from the Government following the June 26 hearing takes the position that, absent Wright's testimony, the Government did not even prove a single overarching conspiracy. Rather, Defendant argues, "there was no evidence that [Defendant] was selling heroin as part of the charged conspiracy, other than Wright's testimony, until the controlled buys were made through Christopher Raines in 2016." (Resp. 6, ECF No. 293.) Setting aside the fact that this is a newly raised argument, the Court disagrees with Defense's position; the jury heard evidence from at least three witnesses other than Wright regarding Defendant's involvement in the sale of drugs in 2015, Michael Fox's sale of drugs and conscription of others into selling in 2015, and Defendant's "business relationship" with Fox during that same time. (Howell Tr. 6:12–24, 8:1–8, ECF No. 291-1; Policaro Tr. 8:21–9:8, 10:5–19, ECF No. 285-4; Raines Tr. 8:14–24, 9:22–10:2, 12:1–14:17, 14:20–15:1, ECF No. 285-3.) The jury was free to make its own determination of the credibility of this testimony; the fact that Defendant does not believe the evidence deserved weight is beside the point at this juncture.

2

inform Wright that he was waiting to receive money from the Defendant in order to complete a drug transaction with Wright. The clear implication from Fox's conversations with Wright was that Fox was supplying drugs to Washington for further distribution. In support of his Motion, the Defendant now offers, post-trial, records of the Virginia Division of Motor Vehicles reflecting that a BMW 745 vehicle was not titled to the Defendant until May 18, 2015, suggesting that the discrepancy in time may materially affect Wright's credibility.

On an alternative front, to further bolster his Motion, Defendant draws the Court's attention to the post-trial discovery by the Government that Wright, acting in concert with another individual, attempted to fraudulently conceal ownership of an asset subject to forfeiture. If known and elicited at trial, the Defendant argues that Wright's obstruction of justice could further tarnish his credibility.

Federal Rule of Criminal Procedure 33, a rarely deployed remedy, states that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The analytical framework for reviewing such motions is guided by the five factors articulated in *United States v. Custis*:

> (a) the evidence must be, in fact, newly discovered, i.e., discovered since trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

988 F.2d 1355, 1359 (4th Cir. 1993). However, as the United States Court of Appeals for the Fourth Circuit noted in *United States v. Fulcher*, "[w]ithout ruling out the

3

possibility that a rare example might exist, we have never allowed a new trial unless all five elements were established." 250 F.3d 244, 249 (4th Cir. 2001).

Drawing from the teachings of *Custis*, Judge Wilkinson, in *United States v. Robinson*, described the type of evidence that may warrant relief under Rule 33. "If the government's case rested entirely on the uncorroborated testimony of a single witness who was discovered after trial to be utterly unworthy of being believed because he had lied consistently in a string of previous cases, the district judge would have the power to grant a new trial . . . ." 627 F.3d 941, 949 (4th Cir. 2010) (quoting *United States v. Taglia*, 922 F.2d 413, 415 (7th Cir. 1991)). The Fourth Circuit in *Robinson* reiterated its "reluctance to order retrials because of subsequently discovered impeachment evidence." *Robinson*, 627 F.3d at 949.

In reviewing the evidence in this case, which consisted of, in addition to Wright, eight other non-law enforcement witnesses implicating the Defendant in a conspiracy to distribute heroin, the Court is not convinced that the Defendant has demonstrated a miscarriage of justice. After hearing ample testimony from a number of witnesses, the jury found that Defendant was involved in the charged conspiracy. As much as Defendant seeks to challenge the credibility of these witnesses, their testimony was buttressed by the fact that investigators of the Virginia State Police made several controlled buys of heroin from the Defendant.

On the question of Wright's supposed perjury with regard to his recollection of Defendant driving a BMW, a review of the trial transcript does not reveal that the Government's line of questioning of Wright was strictly limited to October 2014 through

4

March 2015, as Defendant characterizes it. The transcript reveals that the Government's questioning focused on "early 2015" into "the middle of 2015." (Wright Tr. 6:22–24, 7:16–20, ECF No. 282-6.) This broader span of time could in fact encompass the titling of Defendant's car, contrary to the timeline Defendant's Motion depicts.[2] It is also noteworthy that Wright merely testified that he observed the Defendant driving a BMW 745 during the time frame in question, but never described the vehicle as being owned by Defendant.[3]

For the reasons discussed above, the post-trial discovery that Wright and another individual attempted to fraudulently conceal ownership of a residence subject to forfeiture by filing a fraudulent Deed of Conveyance is insufficient to warrant a new trial under Rule 33. While Wright's testimony was clearly helpful in establishing the quantitation of heroin necessary to support the charge in the Indictment, it was not the only evidence presented to the jury for it to do so.[4] Moreover, Wright's role in the

---

[2] And, as the Court noted at the June 26 hearing, there is no evidence that Defendant was not in possession of the vehicle prior to May of 2015, despite it not being titled to him until then.

[3] Although the Defendant seems to suggest that a discrepancy in the dates in which the Defendant was driving a BMW 745 is suggestive of perjury, it is significant in weighing his general credibility that Wright never testified that he personally observed the Defendant selling heroin.

[4] Among the evidence presented to the jury was the following:
    In 2015:
- Kathryn Howell purchased heroin from Defendant at least twice. (Howell Tr. 6:22–24.)
- Defendant was observed to have a close association and "business relationship" with Michael Fox. (Raines Tr. 9:22–10:2.)
- Fox recruited Jeff Policaro to sell heroin, and Policaro sold two to seven grams of heroin daily for Fox, for almost a year. (Policaro Tr. 10:5–11:17.)
- Policaro saw Defendant and Fox at Wright's home two to three times a week. (*Id.* at 8:21–9:8.)

Government's case, while significant, nevertheless falls far short of the standard articulated by the Fourth Circuit in *Robinson*, as does his unrelated fraudulent conduct. Wright's misconduct, while it perhaps would have been useful in the Defendant's impeachment arsenal, had no direct relation to the underlying facts of the case or the integrity of the investigation.

---

- Policaro witnessed Wright purchase large quantities of heroin at the house on "four or five occasions"; these deliveries took the form of bricks "twelve to fifteen inches long, three to four inches tall, five to six inches wide." (*Id.* at 11:18–24, 12:9–16.)
- Wright directed Christopher Raines, who had been buying heroin from him since 2012, to start buying from Fox. (Raines Tr. 11:18–12:14.)

In 2016:
- Raines made thirteen controlled purchases from Defendant, after Fox stopped selling heroin to Raines and told him to get the drug from Defendant instead. (*Id.* at 14:16–19, 17:11–15.)
- William Greer had a contact in his and his wife's phone labeled "Cuzz" and "Tin" and he would call these numbers to get his heroin fix; at this time he was a daily user. (Greer Tr. 7:9–12, 8:15–10:6.) "Tin" was a name that Defendant was known by. (Raines Tr. 8:14–9:1; Fontaine Tr. 6:7–8.) When Greer called these numbers, various individuals would respond to sell him heroin; Defendant was one such responder. (Greer Tr. at 10:10–11:7.)
- Marcellus White saw Tyrell Brown with four-ounce baseball-sized quantities of heroin "a few times," and that one of those times Brown indicated that the heroin was for "Mike and Dustin." (White Tr. 8:4–9:17.) One ounce is equal to twenty-eight grams. (Policaro Tr. 11:10–11.)
- Divine Fontaine purchased heroin from Defendant in October 2016, at which time Defendant referred Fontaine to his "brother" for future transactions, and told him that dealing with this brother would be "the same as dealing with [Defendant]." (Fontaine Tr. 8:5–9.)

This evidence could support a finding that Defendant was a member of a conspiracy that involved one kilogram or more of heroin, as charged in the Indictment. Defendant asks the Court to draw conclusions about witness motives, relationships, and to allocate weight—or no weight—to various portions of testimony. That is not the Court's role, but rather one for the trier of fact. The Court is merely responsible for assessing whether sufficient evidence was presented for the jury to find Defendant guilty, even without Wright's testimony. The Court finds that the above quantitative evidence, coupled with the volume suggested by the evidence of an ongoing pattern of distribution activity, is sufficient to support the jury's verdict. *See Robinson*, 627 F.3d at 950–51.

Based on the foregoing analysis, the Defendant's Motion for a New Trial will be denied. An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: July 23 2018
Richmond, VA